# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

State of West Virginia ex rel.
M. Andrew Brison,
Petitioner

vs.)  No. 19-0689 (Kanawha County 16-C-1590)

The Honorable Carrie L. Webster, Judge of the
Circuit Court of Kanawha County;
and David F. Nelson, Sr.,
Respondents

**FILED**
**May 22, 2020**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner, M. Andrew Brison, by counsel, Daniel R. Schuda, seeks to invoke the original jurisdiction of this Court to prohibit the Circuit Court of Kanawha County from enforcing its order denying his request for discovery of a settlement agreement reached between Respondent David F. Nelson, Sr. and Brison and Nelson's former law firm as well as related documents.  In his petition, Petitioner alleges that the circuit court committed clear legal error by finding that communications between adverse parties to a settlement agreement, as well as the settlement agreement itself, are protected from discovery by both the attorney-client privilege and the work product doctrine.  Respondent Nelson filed a response, by counsel, Paul M. Stroebel.  Respondent Judge Webster made no appearance.

As more fully explained herein, we agree that the circuit court misapplied both the attorney-client privilege and the work product doctrine.  However, since the circuit court ruled that the documents in question were not relevant, and the circuit court's order correctly applied the rules of civil procedure, Petitioner did not establish that the circuit court's rulings were clearly erroneous as a matter of law.  Accordingly, this case satisfies the "limited circumstance" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for memorandum decision.

In May 2010, Allen, Kopet & Associates, PLLC[1] ("AK") acquired the Charleston law firm of Francis, Nelson & Brison, PLLC ("FNB").  All of the named partners of FNB, R. Ford Francis, David N. Nelson, and M. Andrew Brison, were retained by AK in its Charleston Office.  As a part of the agreement, AK agreed to pay off – but not assume – a commercial note in the amount of approximately $375,000.00, personally signed for by Francis, Nelson, and Brison. If Francis, Nelson, or Brison were to leave AK early, they would be required to pay to AK a monetary penalty that decreased over time.

---

[1] At some point, Allen, Kopet & Associates was renamed to Allen & Newman, PLLC.

1

As it had agreed, AK began making payments on the commercial note. All was well until Brison left AK in July 2013. Under the terms of his agreement with AK, the penalty due for his departure was $50,000.00; however, Brison, never paid the penalty to AK. Thereafter, Nelson left AK in November 2013. Similarly, the penalty due for his departure was $50,000.00, and Nelson did not pay the penalty at that time.

After Brison and Nelson left AK, AK stopped making payments on the commercial note, leaving an outstanding balance of approximately $100,000.00. Because AK stopped making payments, both interest and penalties began to accrue. The holder of the note, Fifth Third Bank, contacted Nelson and informed him that AK had stopped making payments, and that Fifth Third was going to call the note. Thereafter, Brison refused to pay any portion of the note; Nelson then demanded that AK pay the note, but later decided to pay it in full to forestall litigation.

After making that payment, Nelson brought suit against AK & Brison. The allegations against AK were resolved in a confidential settlement agreement, as part of which, AK assigned its rights to collect the penalty owed AK to Nelson. After securing the assignment, Nelson amended his complaint, alleging three claims against Brison: 1) The breach of contract/penalty payment assigned to Nelson by AK; 2) Unjust enrichment, in that Nelson paid Brison's share of the debt to Fifth Third Bank; and 3) Breach of fiduciary duty.

In discovery, Brison sought many items, including the settlement agreement between Nelson and AK as well as written communications between Nelson's counsel and AK's counsel during those settlement negotiations. Nelson objected on attorney-client and work product grounds. The circuit court reviewed the settlement agreement in camera and held that the settlement agreement was shielded from discovery by the attorney-client privilege and work product doctrine and further that the "document itself does not contain any discussion or representation regarding any specific facts integral or relevant to the claims between Nelson & Brison."

As for the request for other written documents or communications between Nelson and AK, the circuit court did not review those documents but nonetheless concluded that the work product doctrine applied to them, as well. The circuit court also concluded that these documents were not relevant:

> The principal argument raised is that [Brison] may have a right to an offset [against] Nelson's recovery from [AK] from any judgment obtained against Brison. This contention ignores the fact that Nelson has brought both breach of contract and Wage Payment and Collection Act claims against [AK], which were separate and distinct from his claims against Brison regarding the departure penalty and commercial loan.

It is from entry of this order that Brison appeals.

We first address the circuit court's application of the attorney-client privilege and the work product doctrine. To establish attorney-client privilege we have held that:

> [T]hree main elements must be present: (1) both parties must contemplate that the attorney-client relationship does or will exist; (2) the advice must be sought by the

client from the attorney in his capacity as a legal advisor; (3) the communication between the attorney and client must be intended to be confidential.

Syllabus Point 2, in part, *State v. Burton,* 163 W.Va. 40, 254 S.E.2d 129 (1979). For work product to attach under West Virginia Rule of Civil Procedure 26(a)(3), "documents and tangible things . . . prepared in anticipation of litigation" are only discoverable upon a showing of "substantial need of the materials . . . and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." W.V.R.C.P., Rule 26(a)(3). We have adopted a test

> To determine whether a document was prepared in anticipation of litigation and, is therefore, protected from disclosure under the work product doctrine, the primary motivating purpose behind the creation of the document must have been to assist in pending or probable future litigation.

Syllabus Point 7, *State ex rel. United Hosp. Center, Inc. v. Bedell,* 199 W.Va. 316, 484 S.E.2d 199 (1997). We would note that the circuit court correctly performed an in camera review of the settlement agreement to determine if the attorney-client privilege or work product doctrine applied to it. *See* Syllabus Point 2, *State ex rel. Nationwide Mut. Ins. Co. v. Kaufman*, 222 W. Va. 37, 658 S.E.2d 728 (2008).

Notwithstanding that the circuit court followed the correct procedure in this matter, its conclusion that the attorney-client privilege and work product doctrine prevented discovery of documents that are exchanged between adverse parties to a lawsuit was clearly erroneous. An email from one lawyer to another, adverse, lawyer about a settlement agreement is not protected by the attorney-client privilege because there is no attorney-client relationship between them; no legal advice is contained in documents exchanged outside the attorney-client relationship; and the disclosure of documents or other information to adverse third parties destroys any privilege that might attach. Even if we assume the documents were attorney-client communications, "[t]he attorney-client privilege may be waived if disclosure of privileged communications is made to third parties." Syllabus Point 12, *Marano v. Holland,* 179 W.Va. 156, 366 S.E.2d 117 (1988).

A similar result applies to the work product doctrine: even if a document was prepared by an attorney actively engaged in a lawsuit, the very moment that document was provided to adverse third parties, any protections afforded by that doctrine were waived. Simply put, there is no protection from disclosure of documents by the work product doctrine, when those documents are exchanged between two adverse parties. *See State ex rel. McCormick v. Zakaib*, 189 W. Va. 258, 261 n. 7, 430 S.E.2d 316, 319 n. 7 (1993). Thus, the circuit court was incorrect to conclude that the documents in question were protected from disclosure by either the attorney-client privilege or the work product doctrine.

However, our analysis does not end there. The circuit court specifically found, after in camera review, that the documents were irrelevant to this matter. Under the West Virginia Rules of Civil Procedure:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to

the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

W.Va. R. Civ. P. 26(b)(1).

A threshold issue regarding all discovery requests is relevancy. This is so because "[t]he question of the relevancy of the information sought through discovery essentially involves a determination of how substantively the information requested bears on the issues to be tried." Syl[labus] P[oin]t 4, in part, *State Farm Mut. Auto. Ins. Co. v. Stephens,* 188 W.Va. 622, 425 S.E.2d 577 (1992).

*State ex rel. Erie Ins. Prop. & Cas. Co. v. Mazzone*, 218 W. Va. 593, 596, 625 S.E.2d 355, 358 (2005).  Because the circuit court's finding is in the context of a discovery dispute, rather than an admissibility issue, the relevancy determinations made by the circuit court were necessarily that the documents sought by Nelson were not "relevant to the subject matter involved in the pending action."  W.V.R.C.P., Rule 26(b)(1).  In that light,

A circuit court's ruling on discovery requests is reviewed [under] an abuse of discretion standard; but, where a circuit court's ruling turns on a misinterpretation of the West Virginia Rules of Civil Procedure, our review is plenary. The discretion that is normally given to a trial court's procedural decisions does not apply where the trial court makes no findings or applies the wrong legal standard.

Syllabus Point 5, *State ex rel. Medical Assurance of West Virginia v. Recht,* 215 W. Va. 457, 583 S.E.2d 80 (2003).  We have also clearly held that before this Court will grant extraordinary relief, there are five elements that we must examine to determine whether prohibition is proper:

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be

4

satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syllabus Point 4, *State ex rel. Hoover v. Berger,* 199 W.Va. 12, 483 S.E.2d 12 (1996). In this case, we believe it clear that Petitioner's failure to establish the third prong of *Hoover* – whether the circuit court's order is clearly erroneous as a matter of law – is dispositive. Here, in making its determinations, the circuit court laid out its findings in a written order which clearly stated that the documents in question were not relevant. From that order, we do not conclude that the circuit court incorrectly applied the rules of civil procedure. Thus, the circuit court was not clearly erroneous as a matter of law.

Accordingly, Petitioner did not establish a clear legal right to the relief requested, and the extraordinary remedy of a writ of prohibition is denied.

Writ denied.

**ISSUED:** May 22, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison